USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/16/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

HICKS & WARREN LLC,

Plaintiff,

- against -

LIBERTY MUTUAL INSURANCE COMPANY,

Defendant.

---------------------------------------------------- X

**OPINION AND ORDER**

**10 Civ. 9457 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

Hicks & Warren LLC ("HW") brings this action against Liberty Mutual Insurance Company ("Liberty"), claiming surety liability on a performance bond for $8,246,517.61 awarded to HW in arbitration and confirmed by the Supreme Court of the State of New York, County of New York, against the bond's principal, White Rose Contracting, Inc. and The Stegla Group, Inc., Joint Venture (collectively, "Stegla"). Liberty now moves for partial summary judgment as to the $4,038,270 in attorneys' fees and $161,016.17 in administrative costs and arbitrators' fees awarded to HW in the arbitration against Stegla, which HW now seeks to recover from Liberty as surety. For the reasons stated below, summary

judgment is denied.

## II. BACKGROUND

On October 12, 2002, HW, as owner-developer, and Stegla, as contractor, entered into a contract (the "Contract") for the construction of a residential complex in Brooklyn, for the guaranteed maximum price of $13,556,824.[1] Article 4.6.2 of the General Conditions of the Contract requires that "any claim arising out of or related to the contract . . . shall be subject to arbitration."[2] Paragraph 29 of the Rider to the General Conditions of the Contract for Construction expressly attaches to the arbitration clause at 4.6.2 and stipulates: "In any arbitration brought under this Article, the prevailing party shall be entitled to an award of its costs and reasonable attorney's fees."[3]

Paragraph 59 of the Rider to the General Conditions further requires Stegla to furnish performance and payment bonds "covering faithful performance

---

[1] *See* Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Def. 56.1 ") ¶ 4.

[2] General Conditions of the Contract for Construction, Art. 4.6.2 ("Art. 4.6.2 "), Ex. A to 3/28/11 Declaration of Edward J. Henderson, defendant's counsel, in Opposition to Defendant's Motion for Partial Summary Judgment, ("Henderson Decl.").

[3] Rider to the General Conditions of the Contract for Construction, ¶ 29, Ex. A to Henderson Decl.

of the Contract and payments of the Contractor's obligations arising thereunder."[4] Pursuant to Paragraph 59, Stegla secured from Liberty a modified AIA (American Institute of Architects) A312 performance bond (the "Performance Bond") naming HW as obligee, Liberty as surety, and Stegla as principal.[5] Paragraph 1 of the Performance Bond provides that Stegla and Liberty "jointly and severally" bind themselves to HW for the "performance of the Construction Contract," which is "incorporated [t]herein by reference."[6] Paragraph 6 of the Performance Bond, concerning Liberty's liability in the event of Stegla's default, provides in relevant part:

> To the limit of the amount of this Bond, but subject to the commitment by [HW] of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, [Liberty] is obligated without duplication for:
>
> > 6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;
> >
> > 6.2 Additional legal, design professional and delay costs resulting from [Stegla's] default.[7]

---

4 *Id.* ¶ 59.

5 *See* Def. 56.1 ¶¶ 5-6.

6 Performance Bond, ¶ 1, Ex. B to Henderson Decl.

7 *Id.* ¶ 6.

After modifying the terms of the Contract numerous times, HW eventually terminated the Contract with Stegla on February 17, 2005.[8] Shortly thereafter, HW contacted Liberty requesting "fulfillment of its obligations under the Performance Bond," and also commenced arbitration against Stegla seeking damages of $10,000,000.[9] Liberty initiated an investigation of HW's claim, ultimately denying the claim in a letter dated July 20, 2006.[10] In response, and to avoid the expiration of the statute of limitations, HW filed a claim in this Court against Liberty on August 18, 2006, which was then dismissed without prejudice pursuant to a tolling agreement pending the outcome of the arbitration.[11]

Arbitration between HW and Stegla continued until May 12, 2009, when the arbitrators found that HW's termination of the Contract with Stegla was untimely though not wrongful.[12] The arbitrators awarded HW cost-of-completion damages in the amount of $2,797,060, interest on its damages in the amount of $398,581, and $4,199,286.17 in attorneys' fees and costs incurred in the

---

[8]   *See* Def. 56.1 ¶¶ 10-12.

[9]   *Id.* ¶¶ 13-14.

[10]  *See id.* ¶ 18.

[11]  *See id.* ¶¶ 19-20.

[12]  *See id.* ¶ 23.

arbitration.[13] Subsequently, HW moved to confirm the award in state court. The court confirmed the award of damages, and attorneys' fees and costs, with statutory interest, rendering a judgment on November 3, 2010 for $8,246,517.61.[14]

After Liberty denied liability for the arbitration award, HW commenced this action on December 20, 2010, seeking to recover from Liberty as surety the award rendered in arbitration on the bonded contract against the principal Stegla.[15]

## III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[16] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

13 *See id.* ¶¶ 22-24. The only dispute in the parties' 56.1 Statements concerns whether Paragraph 29 of the Rider was in fact the basis for the award of attorneys' fees and costs to HW in the arbitration with Stegla. *See* Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 24.

14 *See* Def. 56.1 ¶ 28.

15 *See id.* ¶ 29.

16 Fed. R. Civ. P. 56(c).

party. A fact is material if it might affect the outcome of the suit under the governing law.'"[17] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[18]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[19] To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[20] and it "'may

---

[17] *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[18] *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)). *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

[19] *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). *Accord In re September 11 Litig.*,500 F. Supp. 2d 356, 361 (S.D.N.Y. 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation marks omitted).

[20] *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

not rely on conclusory allegations or unsubstantiated speculation.'"[21] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[22]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[23] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[24] Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."

## IV. APPLICABLE LAW

---

[21] *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[22] *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[23] *Sledge*, 564 F.3d at 108 (citing *Anderson*, 477 U.S. at 247-50, 255).

[24] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

### A. Fee-Shifting Provisions

It is well-settled in New York and the rest of the country, under the longstanding "American Rule," that attorneys' fees are "incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule."[25] Notably, when interpreting contractual fee-shifting provisions, New York courts are "distinctly inhospitable."[26] Under the exacting "unmistakable intention" standard established by the Court of Appeals in *Hooper Associates v. AGS Computers, Inc.*, the court should award attorneys' fees to the prevailing party under a contractual fee-shifting provision only where the intention to do so is "unmistakably clear from the language of the promise."[27]

### B. Performance Bonds

"It is axiomatic that the . . . purpose of a performance bond is 'to

---

[25] *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003). *Accord United States Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597 (2004).

[26] *Gotham Partners, L.P. v. High River Ltd. P'ship*, 906 N.Y.S.2d 205 (1st Dep't 2010) (citing *Hooper Assocs. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989)).

[27] 74 N.Y.2d at 492 (interpreting an indemnification clause providing for "reasonable counsel fees" as only covering counsel fees incurred between plaintiff and third parties).

assure completion of the [bonded] contract.'"[28]  In the event of the principal's breach of the bonded contract, the surety's obligation is to indemnify the obligee, by either completing performance or compensating the obligee in the amount necessary to complete performance.[29]  Generally, the liability of the surety is limited to the amount specified in the bond and the underlying contract.[30]

"In New York, a bond is a contract and we therefore 'look to standard principles of contract interpretation to determine the rights and obligations of a surety under a bond.'"[31]  However, "it is well established that '[a] compensated, corporate surety is not a favorite of the law and its contract of suretyship will be construed in a manner most favorable to a claimant.'"[32]  "All ambiguities are to be

---

[28] *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 67 (2d Cir. 2004) (quoting *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 140 (1962)).

[29] *See U.W. Marx, Inc. v. Mountbatten Sur. Co., Inc.*, 770 N.Y.S.2d 777, 780 (3d Dep't 2004).

[30] *See id.  See also Fidelity New York, FSB v. Aetna Ins. Co.*, 651 N.Y.S.2d 58, 59 (2d Dep't 1996).

[31] *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 43 (2d Cir. 2009) (quoting *U.S. Fid. & Guar. Co.*, 369 F.3d at 51).  *Accord People v. Backus*, 117 N.Y. 196, 201 (1889) ("[T]he contracts of sureties are to be construed like other contracts so as to give effect to the intention of the parties.").

[32] *Cam-Ful Indus., Inc. v. Fidelity & Deposit Co. of MD*, 922 F.2d 156, 163 (2d Cir. 1991) (quoting *Timberline Elec. Supply Corp. v. Insurance Co. of N. Am.*, 421 N.Y.S.2d 987, 988 (4th Dep't 1979), *aff'd*, 52 N.Y.2d 793 (1980)).

resolved in favor of those for whose benefit the bond is given."[33] Nonetheless, once the court ascertains the parties' intention, the responsibility of the surety is to be strictly construed, and is "'not to be extended or enlarged by implication or construction.'"[34]

In construing the terms of a performance bond, the court also considers the underlying bonded contract, for "it is well settled that a surety bond attaches to the principal contract and must be construed in conjunction with it."[35] Where the terms of the surety's liability are not expressly extended or limited in the performance bond, and the bond expressly incorporates by reference the terms of the underlying contract, "a surety's liability to perform under a performance bond is coextensive with that of the principal."[36]

However, not all provisions in the underlying contract are presumed to be incorporated into the terms of a performance bond by general reference to the

---

[33] *International Fid. Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 405 (S.D.N.Y. 2000) (quoting *McClare v. Massachusetts Bonding & Ins. Co.*, 266 N.Y. 371, 377 (1935)).

[34] *Id.* (quoting *Backus*, 117 N.Y. at 201).

[35] *Tri-State Emp't Servs., Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256, 263 (2d Cir. 2002) (citation omitted).

[36] *United States Fid. and Guar. Co.*, 369 F.3d at 67. *Accord West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co.*, 49 F.3d 48, 50 (2d Cir. 1995).

underlying contract. In particular, arbitration provisions binding obligee and principal to arbitrate disputes arising on the underlying contract do not generally bind the surety to arbitrate on the performance bond, unless the performance bond clearly shows such intent.[37] Nonetheless, where a surety does not agree to resolve disputes on the performance bond through arbitration, but accepts the agreement of the obligee and principal to do so on the bonded contract, "'for purposes of later determining its liability under its performance bond, [the surety] would accept and be bound by the resolution reached in the arbitration forum of any dispute between the [obligee] and [principal].'"[38]

### C. Summary Judgment in Contract and Performance Bond Disputes

A motion for summary judgment may be granted in a contract dispute only where the contractual language on which the moving party's case rests is found to be "wholly unambiguous and to convey a definite meaning."[39] Thus, "the initial question for the court on a motion for summary judgment with respect to a

---

[37] *See Wonder Works Const. Corp. v. R.C. Dolner, Inc.*, 901 N.Y.S.2d 30 (1st Dep't 2010). *Accord Waldron v. Goddess*, 61 N.Y.2d 181, 184 (1984).

[38] *Continental Grp., Inc. v. NPS Commc'ns., Inc.*, 873 F.2d 613, 618 (2d Cir. 1989) (quoting *Fidelity & Deposit Co. of Md. v. Parsons & Whittemore Contractors Corp.*, 48 N.Y.2d 127, 131-32 (1979).

[39] *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).

contract claim is whether the contract is unambiguous with respect to the question disputed by the parties."[40] Whether or not contractual language is ambiguous is a question of law for the court to decide.[41] Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."[42]

Since performance bonds are interpreted pursuant to standard principles of contract interpretation, under a performance bond "the intention of the parties with respect to the scope of the incorporation of the underlying contract can present a question of fact in construing the surety's obligations."[43] Where the language of a performance bond is found to be ambiguous, the parties' intent regarding incorporation of the underlying contract would be a triable question of

---

40 *Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010).

41 *See id.*

42 *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (citations omitted).

43 *Caravousanos v. Kings Cnty. Hosp.*, 880 N.Y.S.2d 222 (Sup. Ct. Kings Co. 2009), *aff'd*, 904 N.Y.S.2d 444 (2d Dep't 2010).

fact and summary judgment would be inappropriate.[44]

## V. DISCUSSION

Paragraphs 1 and 6 of the Performance Bond are each a possible basis for Liberty's liability for HW's attorneys' fees and costs arising from the arbitration with Stegla. For the following reasons, Liberty's motion for partial summary judgment is denied.

### A. Paragraph 1 of the Performance Bond

Paragraph 1 of the Performance Bond provides that Stegla and Liberty "jointly and severally" bind themselves to HW for the "performance of the Construction Contract," which is "incorporated [t]herein by reference."[45] Liberty argues that the incorporation by reference in Paragraph 1 does not include the arbitration clause in Art. 4.6.2 of the Contract, because an arbitration clause in the bonded contract will only be incorporated by reference where the performance bond clearly shows such intent. Because Paragraph 29 attaches to Art. 4.6.2, Liberty argues, Paragraph 1 does not incorporate Paragraph 29's fee-shifting

---

[44] *See Babylon Assocs. v. Suffolk Cnty.*, 475 N.Y.S.2d 869 (2d Dep't 1984) (holding that where performance bond did not limit sureties' liability solely to cost of completion of the contract, and incorporated by reference terms of principal's contract, triable issue of fact existed as to parties' intention as to whether sureties' liability under the bond would be identical to contractor's liability).

[45] Performance Bond, ¶ 1, Ex. B to Henderson Decl.

provision.

The general incorporation of the Bond by reference in Paragraph 1 does not clearly evince Liberty's intent to arbitrate a dispute arising under the Performance Bond, but Art. 4.6.2 is unambiguous in requiring the arbitration of disputes *arising from the Contract* between HW and Stegla. As such, Liberty agreed to be bound by the outcome of arbitration between HW and Stegla, at least as to those terms of the Contract that are incorporated by reference in Paragraph 1 of the Performance Bond.[46] To grant Liberty's motion, I would have to find that Paragraph 29's prevailing party clause was *not* incorporated, thereby relieving Liberty of liability for the attorneys' fees and costs awarded in the arbitration.[47]

I find the incorporation by reference in Paragraph 1 of the Performance Bond unambiguous, but in HW's favor. Paragraph 29 of the Contract unmistakably provides "costs and reasonable attorney's fees" to the prevailing

---

[46]   *See Continental Grp.*, 873 F.2d at 618.

[47]   HW relies heavily in its brief on the joint and several liability established in Paragraph 1. This reliance is misplaced. New York courts do not consider, let alone find dispositive, joint and several liability between principal and surety in determining the precise extent of surety liability on a performance bond. *See, e.g.*, *Mount Vernon City Sch. Dist. v. Nova Cas. Co.*, 2009 WL 7524288 (Sup. Ct. Westchester Co. July 27, 2009), *aff'd*, 912 N.Y.S.2d 98 (2d Dep't 2010) (analyzing same AIA A312 Performance Bond to determine scope of surety's liability, without ever mentioning joint and several liability). Joint and several liability merely reflects the relationship between surety and principal. The question here is the *scope* of that relationship.

party in the arbitration between HW and Stegla.[48] Paragraph 1 of the Bond incorporates by reference the terms of the Contract, without express limitation; thus Liberty's liability under the Performance Bond is coextensive with Stegla's under the Contract, including liability arising under Paragraph 29. While the parties dispute whether Paragraph 29 was in fact the basis for the arbitration award of attorneys' fees and costs,[49] for the purposes of summary judgment all inferences must be drawn in favor of the nonmoving party: if the arbitrators relied on Paragraph 29 in holding Stegla liable for attorneys' fees and costs in the arbitration, the plain language of Paragraph 1 holds Liberty liable for such an award. Summary judgment as to Liberty's motion to preclude liability under Paragraph 1 of the Performance Bond is therefore denied.

**B. Paragraph 6 of the Performance Bond**

Paragraph 6 provides, in relevant part: "After [HW] has terminated [Stegla's] right to complete the Construction Contract . . . [Liberty] is obligated *without duplication*" for "[6.1] completion of the Construction Contract" and "[6.2] additional legal . . . costs."[50] Liberty argues the Court should look

---

48 *See* Def. 56.1 ¶ 25.

49 *See* Pl. 56.1 ¶ 24.

50 Performance Bond, ¶ 6, Ex. B to Henderson Decl. (emphasis added).

exclusively to Paragraph 6 in determining the scope of its liability, because after HW terminated Stegla, Paragraph 6 expressly limited Liberty's liability "without duplication." Therefore, Liberty argues, if Stegla defaults Paragraph 1 becomes irrelevant, along with its incorporation by reference of the underlying Contract, which includes Paragraph 29's fee-shifting provision. Even accepting *arguendo* the premise of Liberty's argument, and without addressing the merits of this assumption, summary judgment for Liberty is inappropriate under Paragraph 6.

*First*, Liberty may be liable for HW's attorneys' fees and costs under Paragraph 6.1 of the Bond, which imposes liability for "completion of the Construction Contract." The Performance Bond defines the "Construction Contract" as "[t]he agreement between [HW] and [Stegla] . . . including all Contract Documents."[51] Liberty contends that "completion" of the Contract only involves completion of the actual construction project covered by the Contract, not other obligations arising under the Contract such as Paragraph 29's fee-shifting provision. However, on its face, the Bond does not limit, and, in fact, expressly extends Liberty's liability to include the terms of "*all* Contract Documents."[52] Because Stegla's completion of the Contract includes indemnifying HW for

---

[51] *Id.* ¶ 12.2.

[52] *Id.* (emphasis added).

attorneys' fees and costs arising from the arbitration, Liberty, as Stegla's surety, appears to be responsible for that liability. I therefore cannot conclude that Liberty's liability for "completion" of the Contract under Paragraph 6.1 of the Bond is limited to completion of the construction project, a narrow reading that would relieve Liberty of liability under Paragraph 29 of the Contract for HW's attorneys' fees and costs arising from the arbitration with Stegla.

*Second*, Liberty may also be liable for HW's attorneys' fees and costs under Paragraph 6.2 of the Bond, which holds Liberty liable for HW's "*additional legal*, design professional and delay costs *resulting from* [Stegla's] default."[53] Liberty argues that "legal costs" are limited to those attorneys' fees incurred in arranging for the completion of the construction project, as opposed to those incurred in disputing the performance under the bonded Contract or the Performance Bond.

Liberty relies heavily on the Second Circuit's interpretation of the same provision of an AIA A312 performance bond in *United States Fidelity and Guaranty Co.*[54] However, that case is easily distinguished. There, the court held that "it is not unmistakably clear [under *Hooper*] that the use of the term 'legal

---

53 *Id.* ¶ 6 (emphasis added).

54 369 F.3d 34.

costs' in [Paragraph 6] was intended to obligate the Sureties to pay the Obligees' attorneys' fees in litigation *between the Sureties and the Obligees over the Bonds*."[55] In the instant case, by contrast, the obligee, HW, is not seeking attorneys' fees arising from litigation with the surety, Liberty, over the Bond; rather, HW seeks attorneys' fees incurred in its dispute with the principal, Stegla, over the underlying Contract. As such, the holding in *United States Fidelity and Guaranty Co.* is not controlling.

Liberty's liability under Paragraph 6.2 for HW's "legal costs . . . resulting from Stegla's default" appears to include attorneys' fees and costs incurred in the arbitration with Stegla, as a direct result of Stegla's default. Indeed, if the express fee-shifting provision in Paragraph 29 of the underlying Contract is an indication of the parties' intent, the "legal costs" covered in Paragraph 6.2 of the Bond should include attorneys' fees incurred in disputes over the Contract. Thus, summary judgment as to Liberty's motion to preclude liability under Paragraph 6 of the Performance Bond is denied.

## VI. CONCLUSION

For the foregoing reasons, Liberty's motion for partial summary judgment is denied. Pursuant to Rule 56(f), a court may grant summary judgment

---

55 *Id.* at 122 (emphasis added).

to the nonmoving party, but only after providing the movant with notice and a reasonable time to respond.[56] The relevant terms of the Performance Bond and Contract appear to be unambiguous in HW's favor. Liberty is hereby directed to show cause within 21 days of the date of this opinion, as to why summary judgment should not be granted to HW in the sum of $8,246,517.61.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
June 16, 2011

---

[56] Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.").

**-Appearances-**

**For Plaintiff:**

Ian Michael Goldrich, Esq.
Edward J. Henderson, Esq.
Kilpatrick Townsend & Stockton LLP
31 West 52nd Street, 14th Floor
New York, NY 10019
(212) 775-8700

**For Defendant:**

Michael F. Kuzow, Esq.
Westermann, Hamilton, Sheehy,
Aydelott & Keenan, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 794-7500